UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT CASTILLO, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of Social Security )<br>Administration, )<br>)<br>    Defendant. ) | Case No. 4:19-CV-3309 SRW |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in Support of the Complaint. ECF No. 18. Defendant filed a Brief in Support of the Answer. ECF No. 19. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

**I.      Factual and Procedural Background**

On June 23, 2017, Plaintiff Robert Castillo protectively filed an application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 162-67. Plaintiff alleged he has been unable to work since June 1, 2017 due to bulging disc, spondylosis, seizures, memory loss, and lumbar radiculitis. Tr. 162-67, 180. Plaintiff's application was denied on initial

consideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 82-98, 99-101.

Plaintiff and counsel appeared for an initial hearing on February 5, 2019. Tr. 47- 68. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id.* The ALJ also received testimony from vocational expert ("VE") Susan Shea. *Id.* On April 23, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 11-21. On May 6, 2019, Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 157-59. On October 24, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.     Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an

3

individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is

4

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since the application date of June 1, 2017; Plaintiff has the severe impairments of degenerative disk disease, depression, anxiety, and post-traumatic stress disorder; and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 13. The ALJ found Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 416.967(a) in that he can lift, carry, push or pull ten pounds occasionally and less than ten pounds frequently. He can sit for six hours in an eight-hour workday. He can stand or walk for six hours in an eight-hour workday.[1] He cannot operate foot controls. He uses a cane for ambulation, but can still lift, carry, push, or pull within the limits previously cited. He can never climb ropes, ladders, or scaffolds. He can occasionally climb ramps and stairs. He can never

---

[1] The ALJ questioned the VE about a hypothetical individual's ability to work in the national economy if that person could, "Stand or walk for two hours in an eight hour workday." As the case is being remanded, the ALJ may want to reconsider the RFC.

5

>balance. He can occasionally stoop and kneel. He can never crouch or crawl. He cannot tolerate exposure to unprotected heights or hazardous machinery. He cannot tolerate concentrated exposure to vibration. He can perform simple, routine tasks, but with only minimal changes in job settings and duties. He can have no contact with the general public and only occasional contact with coworkers and supervisors.

Tr. 15. At Step Four, the ALJ found Plaintiff was unable to perform his past relevant work. Tr. 19. The ALJ further found Plaintiff was born on August 26, 1974, was 42 years old, which is defined as a younger individual age 18-44, on the date the application was filed. Plaintiff has at least a high school education and is able to communicate in English. The ALJ determined that the transferability of job skills was not material to the determination of disability because, using the Medical-Vocational Rules as a framework, it supported a finding that Plaintiff was "not disabled," whether or not he had transferable job skills. At Step Five, relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as Machine Tender (*Dictionary of Occupational Titles* ("*DOT*") No. 689.585-018), Table Worker (*DOT* No. 739.687-182), and Hand Assembler (*DOT* No. 734.687-074). Tr. 20. The ALJ concluded that Plaintiff was not under a disability between June 1, 2017, and the date of her decision on February 5, 2019. Tr. 20.

**IV.   Discussion**

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ failed to perform a proper credibility evaluation of Plaintiff's subjective allegations of pain; (2) the ALJ failed to properly evaluate opinion evidence from his treating physician, Dr. Emily Doucette; and (3) the ALJ's RFC determination was conclusory and provided no explanation of how the RFC accommodated Plaintiff's severe impairments.

6

**A. The ALJ's Evaluation of Plaintiff's Subjective Allegations of Pain**

Plaintiff's first argument is that the ALJ erred by failing to perform a proper evaluation of his subjective allegations of pain. The Court agrees.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the Commissioner must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).[2] When evaluating a Plaintiff's subjective statements about symptoms, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

*Id.* at 1322 ("*Polaski* factors"). While an ALJ need not explicitly discuss each factor in the decision, he or she must nevertheless acknowledge and consider the *Polaski* factors before discounting a Plaintiff's subjective complaints. *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)).

---

[2] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints. However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017). This ruling clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The factors to be considered remain the same under the new ruling. *See id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529; 416.929.

7

Although it is the prerogative of the ALJ to discount a plaintiff's subjective complaints, SSR 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10.

In the instant action, the ALJ cited to *Polaski* and explicitly wrote that she "considered all symptoms and the extent to which [those] symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" Tr. 15. The ALJ further wrote she considered "the consistency of the [Plaintiff's] allegations with the other evidence of record," which included "the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and other relevant evidence in the claimant's case record." *Id.*

The ALJ evaluated the medical evidence of record related to Plaintiff's complaints of pain for the relevant time period, including Plaintiff's October 27, 2017 emergency room visit for complaints of chest pain, dizziness, and paresthesia in all extremities, Tr. 16, 401-23; a November 26, 2018 visit to a pain management specialist who rated Plaintiff with a four out of five for weakness and described his gait as abnormal and asymmetric, Tr. 17, 446-48; and a January 25, 2019 return visit to his pain management specialist in which his medication dosage was increased, and he was recommended to begin trigger point injections, Tr. 17, 625-27.[3] In

---

[3] The Court notes that a portion of the medical record relates to Plaintiff's treatment prior to his alleged onset date of June 1, 2017.

evaluating Plaintiff's subjective complaints of pain, the ALJ appears to have relied in significant part on the following:

> Regarding the claimant's degenerative disk disease overall, objective imaging showed disc bulges at L4-5 and L1-2, and facet arthropathy at L4-5, L5-S1, and L1-2. Further, the claimant's gait was described as abnormal and asymmetric. However, the claimant reported "weight lifting regularly" as well as working on his motorcycle. Moreover, claimant did not attend physical therapy, did not have epidural injections, did not have chiropractic management, did not use a TENS unit, did not use a back brace, and no treating physician recommended the claimant undergo back surgery. As a whole, the record does not indicate that the claimant's degenerative disk disease resulted in greater limitations than those included in the [ALJ's] residual functional capacity finding.

Tr. 17 (internal citations to the record omitted).

Although it was reasonable for the ALJ to consider Plaintiff's conservative course of treatment, *see, e.g., Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006), it is unclear why the ALJ placed any weight in evaluating his subjective complaints on the absence of a recommendation that Plaintiff undergo surgery. There is no medical evidence to show why Plaintiff's treating physicians did not recommend surgery, and the Court finds no evidence in the record to suggest that Plaintiff's doctors recommended against surgery because his pain and numbness were not sufficiently severe to warrant surgery. To the contrary, the medical record reflects that since he was evaluated for surgery, and despite not being recommended at that time, he "has developed worsened lower extremity weakness which has resulted in multiple falls with injury." Tr. 444. Moreover, there is no evidence in the record that a doctor recommended Plaintiff to use a TENS unit, and the record indicates Plaintiff previously received chiropractic services. Tr. 442, 445, 625 and 628.

The Court also finds the ALJ overlooked evidence in the record when stating Plaintiff did not use a back brace, did not attend physical therapy, and did not receive epidural injections. To

9

the contrary, Plaintiff indicated in his Function Report, dated July 6, 2017, that he used a "brace/split" and the record does not indicate otherwise. Tr. 196. Additionally, multiple treatment notes from Dr. Doucette reflect that Plaintiff performed physical therapy at home and should "continue current therapy." Tr. 354, 358, 360, 363, 365, 368, 475, 572, 585, 604 and 611. Email correspondence between Dr. Doucette and Dr. Mitchell evidenced Plaintiff's challenges in finding an on-site physical therapy program that accepted Medicaid. Tr. 393-94. "A Social Security claimant should not be disfavored because [he] cannot afford . . . medical care on a regular basis." *Basinger v. Heckler*, 725 F.2d 1166, 1170 (8th Cir. 1984). The record also reflects Plaintiff received an epidural steroid injection at least one year prior to his alleged onset date and was recommended to obtain trigger point injections during the relevant time period. Tr. 442, 521, 635-27. As to the ALJ's consideration of Plaintiff's report of weightlifting, the record is unclear if such activity was part of his at-home physical therapy routine, how heavy the weights were, or how often he lifted them. Moreover, the medical records discuss an "exercise regimen" provided by Dr. Mitchell. Tr. 372, 377, 480, 484, 491, 495, 501, 509, 558, 571, 583, 602 and 609. While the ALJ mentioned some of the relevant objective findings in summarizing Plaintiff's medical history, she did not explain how the objective medical findings in the record affected her assessment of the subjective complaints.

      While the Court acknowledges the ALJ included a brief discussion of Plaintiff's daily activities, such as completing household chores, painting, building model cars, and taking care of two pets, her inclusion of such abilities appear to be related to her analysis of Plaintiff's ability to understand, remember, or apply information, and not as a basis to discredit his subjective pain limitations. Tr. 14. There is also an inconsistency between the record and the ALJ's opinion, in

which the ALJ reports Plaintiff has the ability to cook, but his Function Report states he cannot. Tr. 192. The Eighth Circuit has "repeatedly stated that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Hogg v. Shalala*, 45 F.3d 276, 278-79 (8th Cir. 1995) (citing *Harris v. Secretary of DHHS,* 959 F.2d 723, 726 (8th Cir.1992); and *Thomas v. Sullivan,* 876 F.2d 666, 669 (8th Cir.1989)).

In evaluating Plaintiff's symptoms, the ALJ also failed to explicitly discuss the effectiveness and side effects of Plaintiff's pain medication. Plaintiff testified his medication caused him dizziness and drowsiness, Tr. 59, but the ALJ did not consider such side effects in her opinion or whether his medication was efficacious. An ALJ is required to consider medication side effects in the credibility analysis. *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997).

In addition to Plaintiff's back problems and mental health issues, the record contains numerous references to Plaintiff frequently falling, having seizures and loss of consciousness. Plaintiff sought medical treatment for these problems including hospital and doctor visits. *See, e.g.,* Tr. 27, 33, 53-59, 87, 89, 180, 313, 321, 338, 351-54, 359, 362, 366, 372, 442, 468, 471, 480, 501, 537, 555-56, 583, 602, 611, 617 and 625. On one occasion, Plaintiff experienced a seizure during a doctor visit. Tr. 563-64. The ALJ disregarded Plaintiff's seizures and the related medical records. Tr. 18. The ALJ did not address Plaintiff's falls or loss of consciousness. As this matter is being remanded, the ALJ may reconsider these issues.

The Court is mindful that it must defer to the ALJ's assessment of a Plaintiff's subjective complaints if the ALJ conducts the required analysis, supported by good reasons and substantial

evidence. *See Renstrom v. Astrue*, 680 F.3d 1057, 1063-64 (8th Cir. 2012). However, on the specific record in this case, the Court cannot conclude the ALJ adequately considered the relevant factors or articulated good reasons for her assessment. The ALJ's evaluation does not appear to be supported by substantial evidence as portions of the ALJ's decision conflict with the record. The Court therefore finds it necessary to remand this case for further consideration of Plaintiff's subjective complaints. On remand, if the ALJ discounts Plaintiff's allegations of symptoms, she should make it clear why she is doing so, and specifically and accurately detail the inconsistencies in Plaintiff's testimony and the record. This case will be remanded for further proceedings to allow the ALJ to reconsider Plaintiff's subjective complaints.

### B. ALJ's Evaluation of Opinion Evidence from Dr. Doucette

Plaintiff's second argument is the ALJ erred by failing to properly evaluate the opinion evidence from Dr. Doucette. The Court agrees.

In finding Dr. Doucette's opinion to be unpersuasive, the ALJ wrote:

> On June 31, 2019, Emily Doucette, MD, the claimant's treating physician, provided an opinion regarding the claimant's functioning. Dr. Doucette suggested that the claimant was extremely limited. Among other limitations, Dr. Doucette stated that the claimant could stand and walk for less than two of the eight hours and sit for less than fifteen minutes at a time. Dr. Doucette stated that the claimant needed to shift positions at will from sitting, standing, or walking. Dr. Doucette added that the claimant would need to take five-minute long, unscheduled breaks more than three times every eight hours. The opinion is inconsistent with the evidence, particularly the evidence showing that the claimant regularly lifted weights, worked on his motorcycle, did not attend physical therapy, did not have epidural injections, did not have chiropractic management, did not use a TENS unit, and did not use a back brace. For these reasons, Dr. Doucette's opinion is not persuasive.

Tr. 19 (internal citations to the record omitted).

For claims like Plaintiff's filed on or after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c. These new rules provide that the Social Security

12

Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to consider the persuasiveness of any opinion or prior administrative medical finding using the same five factors: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c). However, the rules make clear that supportability and consistency are the "most important factors," and therefore, an ALJ must explain how she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how she considered the remaining factors. *Id. See Brian O v. Comm'r of Soc. Sec.*, No. 1:19-CV-983-ATB, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (*quoting* 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

  The ALJ found Dr. Doucette's opinion unpersuasive because it was "inconsistent with the evidence" "showing that the claimant regularly lifted weights, worked on his motorcycle, did not attend physical therapy, did not have epidural injections, did not have chiropractic management, did not use a TENS unit, and did not use a back brace." As discussed above, the

13

ALJ's determination that Plaintiff did not engage in physical therapy, did not have epidural injections, and did not use a back brace is not consistent with or supported by substantial evidence in the record. Additionally, the record does not reflect that Plaintiff was advised by any of his physicians to use a TENS unit. The ALJ also does not point to where in the record Plaintiff was advised to seek chiropractic care, although he had previously received such care.

As to the ALJ's consideration that he "worked on his motorcycle," the medical record contains a single report of the Plaintiff cutting his left hand while working on a motorcycle. Tr. 436. Plaintiff provided testimony at the hearing before the ALJ that he has "an old motorcycle that's right behind [his] chair" in the living room and "sometimes" he would "sit down on [a] little stool and [he'll] wipe." Tr. 57. He further testified "there's not much [he] can do with it," he "can't ride it," but it "makes [him] happy." Tr. 57. This testimony is inconsistent with the ALJ's determination that he "worked on his motorcycle." The Government notes Plaintiff was in a motorcycle accident a few weeks after the hearing. Tr. 27. Whether this accident shows Plaintiff could ride a motorcycle, or he attempted to ride a motorcycle but could not and crashed, are matters for the ALJ's consideration on remand.

Thus, the reasons given by the ALJ to find Dr. Doucette's opinion unpersuasive as to Plaintiff's functional limitations are not supported by substantial evidence on the record as a whole.

The Court therefore finds it necessary to remand this case for further consideration of the persuasiveness of Dr. Doucette's opinion evidence. On remand, the ALJ must consider the persuasiveness of Dr. Doucette's opinion based on the relevant objective medical evidence with

14

supporting explanations and consistency of that evidence from other medical sources and nonmedical sources in the claim.

### C. RFC Analysis

Because remand is required for reevaluation of Plaintiff's subjective complaints and the opinion evidence of Dr. Doucette, the Court need not reach Plaintiff's argument that the ALJ provided an insufficient discussion of how the evidence supported the RFC finding. However, the Court notes that when the ALJ reevaluates the evidence on remand, she should ensure that her decision includes a narrative discussion, consistent with Social Security Ruling 96-8p, of how she reached her RFC assessment.

### V. Conclusion

For the reasons set forth above, the Court finds remand is required for further consideration of Plaintiff's subjective symptoms, his treating physician's opinion, and the RFC determination.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

Dated this 21st day of December, 2020.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**